## MANCHESTER BUILDING AND LOAN ASSOCIATION

*v.*

## J. FRANK BEARDSLEY et al.

[Decided March 16th, 1907.]

1. The by-laws of a building and loan association provided that the secretary shall receive all moneys from members and others, and pay the same to the treasurer, who shall receive and hold for the association all moneys and securities. One who borrowed from an association received the money from its president, who transacted all the business relating thereto. Arrangements were made with the president to pay the loan, and pursuant to his directions the borrower went to his office, where he found the bond and mortgage. Payment was made to the president, who then tore the seals from the mortgage and endorsed a certificate of cancellation thereon.—*Held*, that the borrower and the holder of a second mortgage, who furnished the money to pay the loan, could assume that the president was authorized to receive the money and endorse the certificate of cancellation.

2. In a suit by a building and loan association to foreclose a mortgage which had been canceled by its president, to whom the money had been paid, but who had failed to pay it to the association, evidence *held* to show that the negligence of the association and its officers was the proximate cause of the loss, which must be borne by the association, and that the mortgage was properly canceled.

3. *2 Gen. Stat. p. 2107 § 23* provides for entry by the clerk on the margin of a registered mortgage of a minute of its discharge. Section 25 provides that a mortgage registered or recorded shall be discharged by an acknowledged certificate, which shall be recorded. *Revision of 1846 (Nix. Dig. pp. 526, 527), Act to Register Mortgages §§ 1, 5*, the words "record" or "recording" are used synonymously with "register" or "registering." In 1858 (*P. L. 1858 p. 90*) a supplement to the act to register mortgages provides for their being registered or recorded in full.—*Held*, that the method provided in section 25 is not exclusive, but that the one contained in section 23 is equally effective.

Heard on bill, answers, replications and proofs.

This is a bill to foreclose a mortgage made by Beardsley to the complainant.

The defendants are Beardsley, Baker, who is the holder of a mortgage upon the same premises, and Shippee, who is the present holder of the title to the property in question.

*Mr. Jacob W. De Yoe,* for the complainant.

*Mr. W. Carrington Cabell,* for the defendants.

GARRISON, V. C.

The defendant Beardsley, on the 14th of June, 1901, made application to the Manchester Building and Loan Association for a loan in the sum of $1,800. Up to this time he was not connected with the association as a shareholder. His application was acted upon favorably, and he became a shareholder of nine shares, and executed a bond and mortgage, dated July 8th, 1901, to the association to secure $1,800. This mortgage was recorded in full in the clerk's office of Passaic county on the 12th of September, 1901. All of the business which Beardsley then transacted with the association was done with William H. Belcher, its president. Belcher had been president of the association for many years. Allee had been its secretary and Roe its treasurer during the same period. The association met at Haledon, in Passaic county. Belcher, its president, practiced law in the city of Paterson, and in his office there there was also an office of the building association; its name was on the door, and its safe was in Belcher's private office.

In December of 1902 Beardsley arranged with one Baker to borrow money from him and mortgage the property to him to secure the loan, and, with the money thus borrowed, to pay off the building and loan association mortgage.

Having been informed by Belcher that if he came to the office in Paterson on the 2d of January, 1903, the business could be transacted, Beardsley, Baker and an attorney procured by Baker to protect his interests attended there upon that day. Beardsley

had previously sent in his pass-book to be balanced, and when they got there it was figured up how much was due upon the bond and mortgage, and Baker gave his check to Beardsley for the amount, which check Beardsley endorsed and turned over to Belcher, who endorsed upon the mortgage, after tearing the seals off of the mortgage, the following language:

"This mortgage is paid and satisfied, and the clerk of Passaic county is hereby authorized to cancel the same of record. The Manchester Building and Loan Association, W. H. Belcher, President. Dated January 2d, 1903."

The mortgage thus endorsed and mutilated, together with the bond, which was similarly mutilated by having its seals torn off, were then delivered to Beardsley or Baker.

The mortgage, on the same day, was taken to the clerk of Passaic county, who made the following entry upon the margin of the record of the mortgage:

"This mortgage, given by J. Frank Beardsley to the Manchester B. & L. Assn., is this 2d day of January, A. D. 1903, canceled of record, the same being produced before me canceled, the seals removed and satisfaction endorsed thereon by Manchester Building and Loan Association, W. H. Belcher, president; Jno. J. Slater, clerk. Dated January 2d, 1903."

At the same time a mortgage from Beardsley to Baker for $1,600 was filed to secure the money which Baker had just advanced.

Later in the same year another mortgage, to secure $500, was given by Beardsley to Baker, which was duly recorded.

On the 17th day of November, 1904, Beardsley conveyed the lands in question to David N. Shippee, who paid $700 in cash, and, of course, took the land subject to the mortgages of Baker aggregating $2,100. In July, 1905, Belcher, the president of the building and loan association, absconded, never having paid into the association's treasury the money received on account of this mortgage. Among the papers in the safe of the building and loan association at its office in Paterson there was found, after Belcher's departure, what purported to be a bond and mortgage from Beardsley to the association. The witness in each of these papers is William H. Belcher. The irresistible

conclusion is that Belcher substituted at some time this forged bond and mortgage for the genuine bond and mortgage, which, as before stated, were delivered by him to Beardsley or Baker on the 2d day of January, 1903. There is also an irresistible conclusion that Belcher continued to pay into the treasury of the association the dues and interest upon the Beardsley stock and loan after the receipt of the principal due on the mortgage. Beardsley certainly did not continue to make these payments, as he assumed that when he paid the mortgage off all of his connection with the association ceased, and he did not consider that he was any longer a stockholder. The dues were paid, and, therefore, the conclusion must be that Belcher paid them. Of course, it is easy to conjecture why he made such payments, because, by so doing, there would not be any occasion to investigate the Beardsley loan or to commence foreclosure proceedings upon the mortgage, which, to his knowledge, was canceled, and in place of which he had substituted a forged mortgage.

After Belcher's departure and a default then occurring in the payment of dues upon the Beardsley stock, the building and loan association commenced this foreclosure suit. It made as parties Beardsley, Baker and Shippee.

The complainant seeks to foreclose the mortgage notwithstanding the payment of the full amount due thereon to the president of the complainant association and the cancellation thereof by the said president, by claiming that the payment was not made to the proper officer so as to bind the association, and that the cancellation was not made by the proper officer so as to similarly bind the association. The contention on behalf of the association is that Beardsley was a member or shareholder; that the by-laws provide that the secretary

"shall receive all moneys from the members and others, and without delay pay the same over to the treasurer, taking a receipt therefor. He shall keep accurate account with all shareholders and others doing business with the association. He shall give such bonds as shall be satisfactory to the board of directors,"

and that the treasurer shall receive all moneys, pay all orders, and

"shall receive and hold in trust for the association all bonds, mortgages, * * * and other securities upon which money may have been loaned by the board of directors."

They argue, therefore, that Beardsley could only make payment so as to bind the association by giving the money to the secretary, and that because the treasurer was the one to have custody of the mortgage he was the only person authorized to execute a certificate of cancellation thereof.

It is undoubtedly true that members of building and loan associations are bound by the by-laws thereof, and may not bind the association by payments not made in accordance therewith, unless such irregular payments, or payments to persons not authorized, are ratified or confirmed by the association, or unless the association, by its conduct, has estopped itself to deny the righteousness of the conduct of the shareholder. Citation of authorities of this principle is unnecessary.

Another equally well-settled principle is that a president or other officer of a corporation may not bind the same unless he be authorized, but his action will frequently bind the association, if, by its conduct, it has estopped itself to deny the right of the person dealing with the president to consider him authorized.

The sole question in the case before us, in view of the well-settled principles applicable thereto, is whether, under the circumstances of this particular case, the association is to be bound by the payment and by the action of the president with respect to the cancellation of the mortgage.

I am of opinion that the association is bound.

The money which was paid was not dues, and was not paid by a member on account of dues, but was paid to satisfy a debt due the association. Of course, such payment must be made to someone who is either specifically or impliedly authorized to receive it. As all of Beardsley's dealings with the association were had through Belcher, as he received the money from Belcher when he gave the bond and mortgage, and received from Belcher the word as to when he should attend to pay the same off, and, upon going to the Paterson office of the association,

found Belcher there with the bond and mortgage, I think the only proper conclusion is that he was justified in believing that Belcher was authorized by the association to receive the debt due upon that bond and mortgage. And to the extent that Baker's rights are involved, certainly he was justified in assuming that this bond and mortgage were being properly paid off when the money therefor was paid to the president of the association who had physical possession of the bond and mortgage.

Although it is argued by the complainant that the president was not the proper person to execute or sign the informal certificate of cancellation, there is nothing to support this contention. I know of no law which, of itself, designates what officer of a corporation is the proper one to make such an informal certificate. While it may be true that the treasurer is the indicated person to sign a receipt for money received by the company, or, perhaps, in cases where the secretary is the proper person to receive the money as in this case, he should be held to be the indicated person to sign a receipt; the writing in question is not a receipt, it is an endorsement upon a mortgage certifying that it has been paid and satisfied, and directing or authorizing its cancellation. Such a writing, it seems to me, in the absence of any specific law or by-law upon the subject, should more properly be made by the president than by any other officer, since his are general powers, and this is a writing in the name of the corporation of a general nature.

Therefore I find that the defendants Beardsley and Baker were justified in assuming that Belcher as president not only was authorized, as I have previously found, to receive the money, but also to make the certificate of cancellation upon the mortgage which he did make.

There is ample testimony to show that this association entrusted large powers to Belcher and carried on a large part of its business through him, having its Paterson office, as just stated, in his private office, where it kept its safe in which its securities were contained. While it is true that the treasurer testifies that he had the Beardsley bond and mortgage at one time and put them in the safe and kept the key of the portion of the safe in which these papers were contained, it also appears that numerous

other mortgages were paid off to Belcher, and I think it clear that he did have physical possession of them for that purpose. The treasurer swears that he did not give this bond and mortgage to Belcher, but there is no explanation as to how Belcher got them, and if the treasurer's testimony is true Belcher could not have obtained them. The very fact that he had them shows that he did have access to the securities of the association, or that the treasurer did give them to him. In any event, as against the innocent persons whose moneys were paid in good faith on account of this bond and mortgage, I think it proper to hold, under the proven facts, that the carelessness or negligence of the association and its officers was the proximate cause of the loss. Under such circumstances the authorities are clear that the association should be the one to bear the loss.

Furthermore, there is proof that during the ten years of Belcher's presidency eighty-four mortgages were canceled in the clerk's office of Passaic county, of which twenty-eight bore substantially similar endorsements to the one in question; three thereof were canceled on a certificate signed by Allee, the secretary; one on the signatures of Belcher as president and Allee as secretary; ten on the signatures of Belcher as president and Roe as treasurer; thirty-nine on the signature of Roe as treasurer, and three certificates of discharge signed by the president and secretary under the seal of the association. It thus appears, not only from the oral testimony, but from the records of the county, that Belcher constantly exercised this power, and that he must have exercised it to the knowledge and with the consent of the association.

Under all the circumstances, therefore, I conclude that this mortgage was properly canceled.

The only other matter relied upon by the complainant is that since the mortgage was recorded in full, and not merely registered in abstract, it cannot be properly discharged excepting by a certificate of discharge duly acknowledged or proved and recorded. The argument is that *2 Gen. Stat. 2107* § *23* provides that when a mortgage is registered, and shall be redeemed and paid, it shall be the duty of the clerk, on application of the mortgagor or person paying the same and producing to him said

mortgage cancelled, or a receipt thereon, signed by the mortgagee, &c., to enter, in a margin to be left for that purpose, a minute of said redemption, payment and discharge, which minute shall be a full and absolute bar to and discharge of the said entry, registry and mortgage, while section 25 provides that any mortgage that has been recorded or registered shall be discharged upon presentation of a certificate signed by the mortgagee, his heirs, &c., acknowledged or proved, and certified in the manner prescribed, &c., and that every such certificate shall be recorded and a reference made, &c. Therefore the complainant claims that unless the certificate of discharge is acknowledged and recorded as provided by the twenty-fifth section, the alleged discharge is not effective. By going back to the revision of 1846 (*Nix. Dig. 550*) it will be found that in sections 1 and 5 of the act to register mortgages the words "record" or "recording" are used synonymously with the words "register" or "registering." Since the registry of a mortgage has a limited use for the purposes of evidence, there was in 1858 (*P. L. 1858 p. 90*) enacted a supplement to the act to register mortgages, providing for their being registered or recorded in full, and such record then became receivable in evidence as copies of deeds are. In 1869 the act was passed which is now section 25 of the general statutes (*Gen. Stat. p. 2107*), providing for another and fuller discharge of mortgages by the instrument therein provided for. I am of opinion that this is not an exclusive method, and that the other statutory method as contained in section 23 of the same act (*Gen. Stat. p. 2107*) is equally effective.

The result is that the bill must be dismissed, with costs.